## BYRON EDGELL v. LEWIS FRANCIS.

*Husband and wife—Action for deprivation of company of wife— Evidence—Statements of wife.*

1. In a suit by a husband against his father-in-law for depriving him of the company of his wife and child, and detaining them, by persuasion and other means, from returning to him, plaintiff was allowed to prove the statements of the wife to him, in the *absence* of her father, concerning the *reasons* why she stayed with her parents, and her *feelings* and *wishes*, and her warning to plaintiff against venturing at her father's on one occasion.

   *Held,* that the case differs from the usual action for seduction in the important particulars that the mischief is not done by the removal of the wife, or by destroying by one act the domestic peace, but is a *continuing* one, going on from day to day, and becoming worse with the delay. The principles, therefore, which always allowed inquiry into the wife's feelings and conduct prior to and at the time of the seduction, must permit such inquiry during the whole period of alienation.

2. In such a case statements made by the wife to a third person to the effect that she would have been living with her husband had it not been for her folks, and but for them she would go back to him, and that, had she not gone home with them the day they came after her, they would have killed her, are inadmissible as evidence, being hearsay.

3. Where, in such a suit, it appeared that the defendant and his wife were acting in concert, and each responsible for what was said and done by the other concerning their common purpose, the sayings and doings of the wife were properly admitted as evidence against the husband.

Error to Eaton.   (Hooker, J.)   Argued April 21, 1887.
Decided June 16, 1887.

Case.   Defendant brings error.   Reversed.   The facts are
stated in the opinion, and in head-note 2.

*H. F. Pennington,* for appellant.
*Huggett & Smith,* for plaintiff.

CAMPBELL, C. J.   Plaintiff sued defendant, his father-in-
law, for depriving him of the company of his wife and child,
detaining them, by persuasion and other means, from return-
ing to him.

The plaintiff and his wife were married in March, 1883,
and about 10 months after their marriage a child was born
to them, while they were keeping house together in the town-
ship of Roxand, Eaton county.   Defendant was living in the
vicinity, and on March 7, 1884, he and his wife took plaintiff's
wife and child home with them, ostensibly on a visit, and she
never came back.   The claim of the plaintiff was that defend-
ant got and kept his wife away from him with the purpose of
breaking up their domestic relations.   The jury found for
plaintiff a verdict for $200.   Defendant brings error.

No charges were asked or given, and the case was put to-
the jury upon the testimony.   All the exceptions are to the
reception of testimony.   This is of two kinds, including
more or less statements of plaintiff's wife indicating the
influence exerted over her, and also testimony concerning
the sayings and doings of defendant's wife, not in his presence.

A part of the talk of plaintiff's wife does not appear very
plainly to have been outside of the presence of her parents,
and it is not easy to find what part was so held; but some of
it was.   All that was excepted to consisted of her statements
concerning the reasons why she stayed with her parents, and
her feelings and wishes, and a warning to plaintiff against
venturing at her father's on one occasion.

This is undoubtedly hearsay, but is claimed to be one of the exceptions to the rule of exclusion relating to what are usually called *res gestæ*, or accompanying acts and circumstances which cannot be well understood without such testimony.

This case differs from the usual action for seduction in the important particulars that the mischief is not done by the removal of the wife, or by destroying by one act the domestic peace. Here the mischief is a continuing one, going on from day to day, and becoming worse with the delay. The principles, therefore, which always allowed inquiry into the wife's feelings and conduct prior to and at the time of the seduction, must permit such inquiry during the whole period of alienation. The law cannot very well shut out what to every intelligent person must appear significant and free from any danger of fabrication and falsehood. Most of this evidence is explanatory of the wife's residence with her parents, and is the only means, except examining her as a witness, of comprehending it. It is daily conduct, explained by concurrent declarations, and we do not think it it is beyond the scope of inquiries always allowed in such cases. In *White v. Ross*, 47 Mich. 172, such testimony was received against the husband, and referred to by this Court as part of the case.

Certain letters were ruled out as not admissible for want of any evidence of parental misconduct at the time of their offer, and on that express ground. But in *Perry v. Lovejoy*, 49 Mich. 529, the wife's letter to her parents complaining of her husband's conduct was held admissible, and the judgment reversed for its exclusion. In the present case none of this testimony seems to us to stand as mere recitals of fact. It all bore directly on dealings and conduct, and was a part of them. We think there was no error in allowing it, and that it was very pertinent. But there were statements made by her to one Haddox which reflected on her parents, and were hearsay, and not admissible.

The testimony concerning the doings and sayings of defendant's wife not only related to similar dealings, but it was further admissible because there was abundant evidence to show that husband and wife were acting in concert, and each responsible for what was said and done by the other concerning their common purpose. We have found no testimony from or concerning anybody that stands in the light of ordinary hearsay, not mixed up with action. The judge below seems to have been solicitous to keep out extraneous matters, and he did so. There would be no advantage in reciting the unsavory language and doings of the parties.

The jury gave quite moderate damages. Defendant appears, as well as his wife, to have been very arbitrary and overbearing, and the jury, who saw all the parties, determined the merits against him. It is a very gross wrong to interfere with the domestic peace of families; and those who do so cannot expect to do it with impunity.

For the error in admitting the statments to Haddox the judgment must be reversed, and a new trial granted.

SHERWOOD and CHAMPLIN, J J., concurred.

MORSE, J. I concur in granting a new trial.