[S. F. No. 2292.  Department Two.—January 30, 1903.]

## E. W. BANISTER, Respondent, v. GEORGE W. CAMPBELL, Appellant.

ACTION ON FOREIGN JUSTICE'S JUDGMENT—CONCLUSIVENESS—DEFENSE OF PAYMENT.—In an action on a judgment rendered in a justice's court of another state, the judgment is conclusive against all defenses which might have been urged in the justice's court; and a defense cannot be allowed that the notes sued upon in the justice's court had been paid before the judgment was rendered.

ID.—JURISDICTION OF JUSTICE'S COURT—DEPOSITION OF JUSTICE.—Under section 1922, it was proper to receive the deposition of the justice who rendered the judgment showing the creation and jurisdiction of the justice's court, in conformity with the act of the state providing for its creation.

ID.—OBJECTION TO DEPOSITION—BEST EVIDENCE—CREATION OF COURT.— An objection to the deposition of the justice that the testimony was irrelevant, imcompetent, and immaterial, does not include the objection that it was not the best evidence of the creation of the justice's court.

ID.—APPEAL—ARGUMENT—GENERAL ASSIGNMENT OF ERROR.—A general assignment of error in the argument upon appeal that "the court

erred in all respects to which exceptions were taken by this appellant as described in the record herein," does not require an examination of the record by this court to see what exceptions were taken by appellant.

APPEAL from a judgment of the Superior Court of Alameda County. John Ellsworth, Judge.

The facts are stated in the opinion.

Edward A. Holman, for Appellant.

A judgment of the justice's court of a sister state is but *prima facie* evidence, and a defense on the merits may be pleaded to it. (Freeman on Judgments, secs. 577, 597; *Robinson* v. *Prescott*, 4 N. H. 450; *Mahurin* v. *Bickford*, 6 N. H. 567; *Taylor* v. *Barron*, 30 N. H. 78;[1] *Wood* v. *Wood*, 78 Ky. 624; Rhorer on Interstate Law, p. 92.) The creation and jurisdiction of the justice's court was not proven by proper record evidence of compliance with statute. (*Kelley* v. *Kelley*, 161 Mass. 111;[2] *Louis* v. *Wabash*, 17 Mo. App. 340; *Corrigan* v. *Morris*, 43 Mo. App. 456.)

J. B. Richardson, for Respondent.

The judgment sued upon is conclusive. (Code Civ. Proc., secs. 1908, 1913; *Weir* v. *Vail*, 65 Cal. 466; *Glass* v. *Blackwell*, 48 Ark. 50; 2 Black on Judgments, 1st ed., sec. 935.) The jurisdiction was properly proved. (Code Civ. Proc., sec. 1922.) The lawful exercise of jurisdiction is presumed. (Code Civ. Proc., sec. 1963.)

Garoutte & Goodwin, *Amici Curiæ*, for hearing in Bank.

Sections 1921 and 1922 of the Code of Civil Procedure only contemplate a certified transcript of the proceedings before the justice, and have no application to the creation or jurisdiction of the court under the law, which cannot be proved by the justice. The jurisdiction of the court under the law must be proved by proving the law, and showing by competent evidence compliance with its terms to establish the court. (*Field* v. *Cain*, 9 N. Mex. 283; *Pond* v. *Simons*, 17

---

[1] 64 Am. Dec. 281.          [2] 42 Am. St. Rep. 389.

Ind. App. 84; *Chicago etc. Ry. Co.* v. *Campbell,* 5 Kan. App. 423; *Kelley* v. *Kelley,* 161 Mass. 111.[1])

COOPER, C.—This action was brought to recover upon two judgments, rendered by a justice of the peace in the city of St. Louis, in the state of Missouri.

Plaintiff recovered judgment, from which defendant appeals. The record shows that the defendant, as a defense to the judgments, alleged affirmatively in his answer that the judgments were procured in the justice court, in the state of Missouri, upon two certain promissory notes, which notes had been by defendant fully paid at the time the judgments were procured; that although the said notes had been so paid, the holder thereof had kept them, refused to surrender them, and on the tenth day of August, 1897, the day this defendant was leaving the city of St. Louis, the suits were brought in the justice court, and summons served on defendant. In other words, the affirmative part of the answer contained matter which, if true, would have constituted a defense to the original actions in the justice's court. The court below, on motion of plaintiff, struck out such affirmative part of the answer, and this ruling is the principal question in the case. Can a defendant, when served in this state upon a judgment rendered in a justice court in a sister state, interpose a defense going to the merits of the action in which the justice's judgment was rendered? In the earlier cases the courts of England treated foreign judgments as only *prima facie* evidence, and allowed a defense to them upon the merits of the original case in which the judgments were obtained. One of the old familiar cases is *Walker* v. *Witter,* 1 Doug. 1, decided in the court of Kings Bench in 1778, upon appeal from a judgment given upon a judgment rendered in the supreme court of Jamaica. After much argument, it was finally held by Lord Mansfield, the other judges agreeing, that while such judgments constituted good grounds of action, they might be examined upon their merits and the facts fully gone into. In *Galbraith* v. *Neville,* 1 Doug. 5, (note,) Lord Kenyon expressed serious doubts concerning the doctrine of *Walker* v. *Witter,* and in course of time the

[1] 42 Am. St. Rep. 389.

English judges receded from the rule of that case. As disapproving its doctrine, and affirming the conclusiveness of foreign judgments as to the merits, we find the language of Lord Ellenborough, in *Tarleton* v. *Tarleton,* 4 Maule & S. 20; of Lord Hardwicke, in *Boucher* v. *Larson,* Cas. t. Hardw. 85, 89; and of Lord Chancellor King, in *Burroughs* v. *Jamineau,* Mos. 1, until, in 1844, in *Henderson* v. *Henderson,* 6 Q. B. 288, Lord Denman intimated that a plea to an action on a colonial judgment ought to steer clear of the merits, in which case he said: ''For whatever constituted a defense in that court ought to have been pleaded there.''

Finally, the doctrine of *Walker* v. *Witter* was overthrown in *Bank of Australia* v. *Nias,* 16 Q. B. 717, and the rule directly adjudged that a plea to the merits upon a colonial judgment otherwise valid was bad, and the law has since been regarded as so settled in England.

In discussing the question, it is said in Bigelow on Estoppel (p. 261) : ''The result, then, finally reached in the courts of England is, that foreign judgments, strictly so called, and colonial judgments stand in the same category and on a perfect equality, so far as the matter of conclusiveness is concerned. In either case any plea which goes to the merits of the action upon which the judgment was rendered, whether impeaching the ruling upon the law or the decision upon the facts, is bad, provided the judgment was not otherwise subject to impeachment.''

The doctrine of the early English cases was at first almost universally accepted in this country, particularly before the adoption of the constitution.

The fourth article of the constitution, in the first section, provides that full faith and credit shall be given in each state to the records and judicial proceedings of every other state. The American courts have, since the adoption of the constitution, almost without exception, followed the modern English rule and the plain dictates of the constitution. In *Taylor* v. *Bryden,* 8 Johns. 175, decided in 1811, Chancellor Kent said: ''To try over again, as of course, every matter of fact which had been duly decided by a competent tribunal, would be disregarding the comity which we justly owe to the courts of other states, and would be carrying the doctrine of re-examination to an oppressive extent. It would be the same

as granting a new trial in every case and upon every question of fact."

In *Lazier* v. *Wescott,* 26 N. Y. 146,[1] the question is fully discussed, and the rule adopted that the judgment of a foreign court is conclusive upon the merits, subject to be impeached by proof that the court had no jurisdiction of the subject-matter or of the person of the defendant, or that the judgment was fraudulently obtained. Among the many cases affirming the rule may be mentioned *Silver Lake Bank* v. *Harding,* 5 Ohio, 545; *Glass* v. *Blackwell,* 48 Ark. 50; *Beal* v. *Smith,* 14 Tex. 305; *Monroe* v. *Douglas,* 4 Sand. Ch. 126.

In Chitty on Contracts (11th Am. ed., vol. 2, p. 1177) the rule is thus clearly stated: "But the rule may now be taken to be: that if a question has been decided by such a court, in a proceeding *in personam,* between parties properly brought before it, this will preclude an inquiry in our courts between the same parties into the merits of the case upon the facts so found; for this reason, that whatever constituted a defense in the foreign court, ought to have been pleaded there."

The rule as above stated is made the rule in this state by our codes. It is provided in the Code of Civil Procedure (sec. 1913) that, with certain exceptions, the effect of a "judicial record of a sister state is the same in this state as in the state where it was made." It is provided in the Code of Civil Procedure (sec. 1908) that a judgment in this state, by a court having jurisdiction, is conclusive in respect to the matter directly adjudged "between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding."

And section 1916 provides that "Any judicial record may be impeached by evidence of a want of jurisdiction in the court or judicial officer, of collusion between the parties, or of fraud in the party offering the record, in respect to the proceedings."

In this case the justice court had jurisdiction. The defendant alleges that he was served with summons. He ap-

[1] 82 Am. Dec. 404, and note.

peared in the original cases before the justice and defended the actions, and then and there was the time for him to have shown, if he could do so, that the notes had been paid. He will not now be heard as to the merits of the cases in which the judgments were rendered.

It is earnestly contended that the plaintiff was required to prove that the justice court was legally brought into existence, by being divided into a justice district of the city of St. Louis, under the act providing for its creation, and a report of certain judges of the city. The claim is made that the evidence received was not the primary evidence, and that the report duly filed, or a certified copy thereof, was the best evidence; but that the court allowed the deposition of the justice for the purpose of proving such jurisdiction and districting the city. We deem it sufficient to say that it is expressly provided in the Code of Civil Procedure (sec. 1922) that "such judgment, proceedings, and jurisdiction may also be proved by the justice himself, on the production of his docket, or by a copy of the judgment, and his oral examination as a witness." Not only this, but the objection made to the evidence was, that it is irrelevant, incompetent, and immaterial. It was not objected to upon the ground that it was not the best evidence. (*Braly* v. *Reese,* 51 Cal. 463; *Everson* v. *Mayhew,* 85 Cal. 10.)

The general objection that the "court erred in all respects to which exceptions were taken by this appellant, as described in the record herein," does not demand of us an examination. We will not, upon such assignment, examine the record to see what exceptions were taken by appellant. (*People* v. *Cebulla,* 137 Cal. 314.)

The judgment should be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

McFarland, J., Henshaw, J., Lorigan, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 28th of February, 1903 :—

BEATTY, C. J., dissenting.—I dissent from the order denying a rehearing.

There was no competent evidence of the existence of the court upon whose judgments the action is founded.

The statute of Missouri, under which alone said court could have been called into existence, devolved upon certain judicial officers of the city of St. Louis the duty of dividing the city into districts, and of defining their boundaries, in each of which a justice of the peace was to be elected. The division made by them was required to be accurately and fully described in a signed report, which was to be filed in the office of the clerk of the circuit court, and certified copies thereof in certain other public offices. Of this report so filed, and of the districts thereby created, all courts exercising jurisdiction, original or appellate, in or over the city, were required to take judicial notice. Under this law it is clear that upon any question as to the existence of such districts, or any of them, the courts of Missouri would be absolutely concluded by the official report, just as they would be bound by the terms of the statute if, by statute, the legislature had directly defined a district without the intervention of a commission or other subordinate agency—that is to say, in the absence of the report, there would be for the courts of Missouri no districts and no justices. If this would be the result in Missouri, the same result follows here; and since we cannot take judicial notice of the report, its terms and existence must be proved either by a duly certified copy or by other competent evidence.

But no evidence whatever was introduced to show that any division had ever been made or report filed. There was consequently no proof of the existence of a fourth district, and, necessarily, a total failure to prove that there was any court to render the judgments alleged. Specific and repeated objections were made by the defendant at the trial to the evidence, upon the ground that there was no proof of the districting of the city; and if, as I believe, this was a fatal defect in plaintiff's case, there can be no question as to the right of the appellant to avail himself of the objection here.

Sections 1921 and 1922 of the Code of Civil Procedure do not enable a person claiming to be justice of the peace to prove by his oath or certificate the existence of the court. When the existence of the court has been established, the fact that a particular person was the justice of that court may be proved by his oath or certificate, and also the facts giving the court jurisdiction of the parties and the law giving it jurisdiction of the subject-matter. All these things may be proved by the justice, but the existence of a court must first be proved, either by the law creating it or, as in this instance, by the acts of a commission acting in pursuance of the law, before it can appear that there is any justice.