[L. A. No. 3468.   Department Two.—September 29, 1915.]

## BARTON LAND AND WATER COMPANY et al., Respondents, v. CRAFTON WATER COMPANY, Appellant.

WATER-RIGHTS — UNLAWFUL DIVERSION BY COTENANT — INJUNCTION — FINDING WITHIN ISSUES.—In a suit to enjoin interference with the waters of a certain mountain stream, which are jointly owned by plaintiffs and defendant, each being entitled to the flow up to a certain number of inches during a certain number of hours every ten days, (the diversion of the waters being made by means of a zanja), where the complaint alleged that the natural flow of the stream was diminished, to the detriment of plaintiffs, by the action of defendant in pumping water from two wells sunk in the stream some distance above the zanja, from which wells it was conducted by the defendant through an impervious conduit and then returned to the stream, and thereafter taken by the defendant from the zanja, the contention that a finding by the court that the abstraction of the water to the injury of the plaintiffs was from the zanja, and therefore the allegation of detrimental removal of water from the creek is not sustained, there being no direct averment that taking water from the zanja was injurious to plaintiffs, cannot be maintained, as the zanja was merely an instrument used in the process of depriving plaintiffs of the waters of the creek in natural and unobstructed flow at the point of intake.

ID.—FINDINGS—DIVERSION OF WATER—MEANS OF.—Where the water pumped from the wells was returned to the stream after passing

through the impervious conduit and from the stream it flowed into the zanja, but the court found that, at no time after the commingling of the pumped water with that in the conduit, and afterward with that in the stream, did defendant abandon the claim of right to divert and use all of it, it was not necessary to specify all the means used in the abstraction of the water from the stream.

Id. — Transmission of Water — When Water not Abandoned.—A stream may be used to carry stored water or water developed from sources not naturally a part of the stream, and such water is not abandoned where there is an intent to recapture it.

Id.—Pleading—Diversion of Water—Sufficiency of Proof.—Where the complaint in such a case contained an allegation that the water pumped by defendant was conveyed "down in said Mill Creek to a point far below the mouth of said cañon," and that without right defendant "diverted and exercised complete control over and appropriated for its own use from said Mill Creek, the amount of water, it, the said defendant so pumped," this averment sufficiently covered the whole subject, and proof of the taking of the water from the zanja supported it.

Id.—Unlawful Taking of Water—Findings—Failure to Object to Evidence.—Where there was no objection made to the evidence respecting the use of the water by defendant at its point of diversion from the zanja, it cannot be contended on appeal that the findings upon that subject are not within the issues.

Id.—Subsurface Waters of Creek—Rights in.—The surface flow and the underflow of a mountain stream passing through a rocky and precipitous cañon partially blocked by detritus and having many "narrows," cannot be considered as separate and distinct sources of water supply; and in such an action, not to enjoin the depletion of the underflow at the intake of the zanja, but to prevent the removal of water from the stream far above, questions concerning the underflow at the intake are not material except that plaintiffs are entitled to such underflow there as is necessary to uphold the surface waters taken by them from the stream; and in the sense that the diverter of surface water is entitled to the subterranean stream both for supply to and support of such water, a finding that plaintiffs are entitled to the use of the waters of the creek "both surface and subterranean" during a certain portion of time, is a proper one.

Id. — Appropriator of Surface Water — Rights in Subterranean Stream.—An appropriator of surface water may not be made to suffer a diminution of his supply by another who without right accomplishes that injury indirectly by depleting the subterranean stream; and he may invoke the maxim *aqua currit et debet currere ut currere solebat.*

Id.—Removal of Water from Stream—Sufficiency of Finding.—In such a case, where the stream was used merely as a conductor for the

water claimed by defendant, after it was emptied from the conduit a short distance above the intake of the zanja, the fact that this water so diverted was returned to the stream after passage through the conduit, and therefore the stream was not depleted to that extent, did not restore the natural conditions which had been disturbed by the taking of a portion of the underground stream far up the cañon, and which water, although returned to the stream, was claimed by defendant as its own property, and was therefore for all practical purposes as foreign to the waters of the stream as any water which might have been introduced from an independent source; and a finding of the court that defendant by means of the wells and the pumping plant "pumped, took and conducted away and used" a quantity of water from the underground flow, and that such taking diminished both the natural surface and underground flow of the creek to the extent of the whole amount of water "so pumped, diverted and taken," is sustained by the evidence.

ID.—THREAT TO CONTINUE PUMPING—WHEN IMMATERIAL.—Defendant having no right to pump the water from the wells, in such a case, although it asserted that right, its threats or absence of threats, to continue pumping, were immaterial.

ID.—EXERCISE OF CONTROL OVER WATER—FINDINGS SUSTAINED BY EVIDENCE.—In such a case the contention that a finding, that defendant had assumed, retained, and exercised complete control over all of the pumped water, is not sustained by the evidence, because the water was carried in a conduit belonging to a power company, (which latter company used the waters of the stream for power purposes with consent of all parties, afterward returning them to the stream), cannot be maintained, where there was direct testimony to the effect that this was done under an agreement with the owner of the conduit.

ID.—INJUNCTION—EFFECT OF—EQUITABLE RELIEF.—The general effect of the injunctive relief accorded plaintiffs is to prevent the substitution of artificial for natural conditions existing in the watercourse, and such relief has reference to the prevention of the actual damage as well as of threatened injury to a right which, if not denied, might ripen into an easement. Equity always grants such relief in proper cases.

ID.—TENANTS IN COMMON OF WATER—MUTUAL RIGHT OF.—One tenant in common in so far as he interferes with or works an injury upon the joint property to the damage or injury of his cotenant is a trespasser to that extent. He cannot assume, because he has a certain interest in the common property, to deal with it or use it to the detriment of other co-owners; and every one of the parties in such a case has the right to insist upon an unobstructed natural flow of the stream to the intake of the zanja and to demand a continuance of the conditions which prevailed when he made his appropriation.

ID.—UNLAWFUL DIVERSION—INJUNCTION.—The use by a tenant in common of water of more than his share of the water may be enjoined.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Goodcell & Goodcell, and Henry Goodcell, for Appellant.

Byron Waters, and Gregg & Surr, for Respondents.

MELVIN, J.—The corporation defendant appeals from the judgment and from an order denying its motion for a new trial.

There is very little dispute regarding the essential facts. Plaintiffs and their predecessors in interest are, and for many years have been, owners of all of the waters of Mill Creek, in San Bernardino County, to the extent of two thousand five hundred inches for at least one hundred and forty hours every ten days. This water is used for beneficial purposes. Mill Creek is a mountain stream flowing through a steep, rocky cañon in which there are boulders and sand and other detritus beneath which, in some places, the water disappears but flows below the surface forming, in addition to the surface stream, a subterranean one which is in direct contact with and supports the visible torrent. Defendant is a cotenant of plaintiffs and is entitled to all of the flow of Mill Creek, up to two thousand five hundred inches for ninety-five hours during every ten days. Plaintiffs and defendant divert the water belonging to them from Mill Creek by means of a zanja, the intake of which is about three miles below the lower end of the cañon. For many years, and with the consent of the parties hereto, a power company has taken all of the surface water from the stream at two places, in each instance conducting the said water through an impervious conduit, and after using it for the production of electric power has returned it to the stream at points above the zanja of these litigants. During times of scarcity of water defendant, by means of two wells, penetrated the bed of the stream some distance above the zanja and pumped water therefrom to the amount of almost one hundred and forty inches. This was conveyed through the conduit of the power company and the stream to and then through the zanja from which, except a

percentage allowed for seepage and evaporation, an equivalent amount of water was taken at defendant's point of diversion and used by that corporation to the exclusion of its cotenants.

Defendant admits that the court's finding of the fact that the pumping of water from the bed of the stream after collecting it in the wells wrought an injury to plaintiffs was based upon conflicting testimony. The contention is made, however, that certain findings necessary to support the judgment are outside of the issues made by the pleadings; that other findings requisite to sustain the judgment are not justified by the evidence; and that even if all of the findings were conceded to be within the issues and sustained by the evidence, they do not support the conclusions of law or the judgment.

The complaint alleges that the natural flow of the creek was diminished, to the detriment of plaintiffs, by the action of defendant in pumping water from its wells. The court found that the water was abstracted, as alleged, from the stream, but it was also found that after passing through the conduit of the power company the fluid was returned undiminished to the surface flow of Mill Creek. The abstraction of water to the injury of the plaintiffs was from the zanja, as the court found, and therefore, as counsel for defendant argue, the allegation of detrimental removal of water from the creek is not sustained. There being no direct averment that taking water from the zanja was injurious to plaintiffs it follows (so goes the argument) that the findings necessary to sustain the conclusions of law and the judgment regarding the detriment suffered by plaintiffs are lacking. This is hypercriticism. By asking for an injunction because of the interference of defendant with the waters of Mill Creek and then proving the removal of water from the zanja, the plaintiffs have not materially varied from the proof necessary to sustain their allegations. The zanja was merely an instrument used in the process of depriving plaintiffs of the waters of the creek in natural and unobstructed flow at the point of intake. The findings fully cover the processes by which defendant diverted the water from its natural flow as a part of the stream. True, the water pumped from the wells was returned to the stream after passing through the impervious conduit, and from the stream it flowed into the zanja, but, as the court finds, at no time after the commingling of the pumped water with that in

the conduit, and afterward with that in the stream, did defendant abandon the claim of right to divert and use all of it. If defendant had pumped the water directly from the stream through a pipe to his land would any one contend that the diversion was not from the stream but from the pipe? So, here, the conduit, the stream itself, and the zanja constituted mere apparatus used in the conveying of the water. A stream may be used to carry stored water or water developed from sources not naturally a part of the stream. Such water is not abandoned where there is an intent to recapture it. (1 Wiel on Water Rights in the Western States, 3d ed., p. 38.) It was not necessary therefore to specify all of the means used in the abstraction of the water from the stream. The complaint did contain an allegation that the water pumped by defendant was conveyed "down in said Mill Creek to a point far below the mouth of said cañon," and that without right that corporation "diverted and exercised complete control over and appropriated for its own use from said Mill Creek, the amount of water, it, the said defendant, so pumped." This averment sufficiently covers the whole subject and proof of the taking of the water from the zanja supports it. Besides all this, as no objection was made to the evidence respecting the use of the water by defendant at its point of diversion from the zanja, it may not now be contended that the findings upon that subject are not within the issues. (*McDougald* v. *Hulet*, 132 Cal. 163, [64 Pac. 278] ; *Banister* v. *Campbell*, 138 Cal. 455, [71 Pac. 504, 703] ; *Illinois T. & S. Bank* v. *Pacific Ry. Co.*, 115 Cal. 296, [47 Pac. 60].)

Appellant attacks the finding that the plaintiffs are entitled to the use of the waters of the creek "both surface and subterranean" during a certain proportion of the time. As the evidence shows the diversion at the zanja of the surface water by means of the dam, appellant's counsel assert that there is nothing in the evidence to justify the court's conclusion that the subsurface water was also included within the volume to which plaintiffs were entitled. The usual method of removing water from a stream for purposes of irrigation is by a diverting dam, but that does not foreclose the users from the benefit of the waters which flow beneath the surface and uphold the visible stream. It is admitted that some of the evidence supports the finding regarding a diminution of the flow at the surface, because of the operations of the defendant,

and therefore the finding which appellant attacks is proper on account of the physical fact, found by the court, that the underflow supports the stream flowing on the surface. With reference to a stream of the sort that Mill Creek is shown by the evidence to be—that is, a mountain creek flowing in a rocky and precipitous cañon partially blocked by detritus and having many "narrows"—it is not possible logically to consider the surface flow and the underflow as separate and distinct sources of water supply. (*Perry* v. *Calkins,* 159 Cal. 180, [113 Pac. 136].) The action was not to enjoin the depletion of the underflow at the intake of the zanja but to prevent the removal of water from the stream far above. Questions concerning the underflow at the intake are therefore not material, except that plaintiffs are entitled to such underflow there as is necessary to uphold the surface waters taken by them from the stream. In the sense, therefore, that the diverter of surface water is entitled to the subterranean stream both for supply to and support of such water, the finding is a proper one. (*Verdugo Cañon Water Co.* v. *Verdugo,* 152 Cal. 663, [93 Pac. 1021].) This finding, read in connection with the others, means that one who is an appropriator of surface water may not be made to suffer a diminution of his supply by another who without right accomplishes that injury indirectly by depleting the subterranean stream. He may invoke the maxim *aqua currit et debet currere ut currere solebat.* (*Montecito Valley Co.* v. *Santa Barbara,* 144 Cal. 588, [77 Pac. 1113]; *McClintock v. Hudson,* 141 Cal. 280, [74 Pac. 849]; *Cohen* v. *La Canada Land and Water Co.,* 142 Cal. 439, [76 Pac. 47].)

Appellant's counsel say that the eighth finding was not justified by the evidence. This finding was to the effect that defendant by means of the wells and the pumping plant "pumped, took, and conducted away and used" a quantity of water from the underground flow of Mill Creek, and that such taking diminished and lessened both the natural surface and underground flow of the creek to the extent of the whole amount of water "so pumped, diverted, and taken." It is argued that since all of the water so diverted was returned to the stream after passage through an impervious conduit, obviously the stream was not depleted to that extent. But, as we have seen, the stream was used merely as a conductor for the water claimed by defendant after it was emptied from the

conduit a short distance above the intake of the zanja. This did not restore the natural conditions which had been disturbed by the taking of a portion of the underground stream far up the cañon. When the water was returned to the stream it had been claimed by defendant as that corporation's own property and, therefore, for all practical purposes, it was as foreign to the natural flow of Mill Creek as any water which might have been introduced therein from an independent source. The finding is not misleading because the use of the water by defendant, as well as its removal, is specified as an element of the decrease of the natural flow of the stream, and in a true sense defendant was using the water from the moment it was pumped from the wells.

It is admitted that appellant asserts the right to remove water from the wells, but an attack is made upon a finding that said appellant threatens to continue pumping from one of them. The ground of objection is that the evidence fails to support the finding. Granting this to be true, still defendant would not be injured because having no right to pump from either of its wells, its threats or absence of them would not be material.

The court found that defendant had "assumed, retained, and exercised complete control" over all of the pumped water. The point is made that this is not sustained by the evidence because the water was carried in a conduit belonging to the power company. There was direct testimony to the effect that this was done under an agreement with the owner of the conduit so that the finding is amply sustained in its application to the water so long as it was in that carrier. The zanja was under the control of defendant as one of the joint tenants thereof and to hold that the corporation lost control of the excess water in the short journey from the discharge at the end of the power company's container to the intake of the zanja would be to determine that it also lost control of the water to which it was clearly entitled. The finding was amply supported by the evidence.

Upon its contention that the findings do not support the conclusions of law and the judgment, appellant advances practically the same arguments as those which were directed against the findings themselves. For example, it is asserted that there should be no injunction prohibiting the taking of water from the zanja because the defendant was charged with

taking it from the stream. Of the injunction directed against pumping from the wells defendant complains because all of the water so pumped was returned to the stream. These arguments have been sufficiently analyzed and discussed in the examination of the previous assignments of alleged error. They are without merit.

The general effect of the injunctive relief accorded plaintiffs is to prevent the substitution of artificial for natural conditions existing in the watercourse. Such relief has reference to the prevention of the actual damage as well as of threatened injury to a right which, if not denied, might ripen into an easement. Equity always grants such relief in proper cases. (*Anaheim Union Water Co. v. Fuller,* 150 Cal. 333, [11 L. R. A. (N. S.) 1062, 88 Pac. 978]; Kinney on Water Rights, 2d ed., pp. 2931 and 2934.) Under the pleadings and proof the findings, conclusions, and judgment were justified.

Plaintiffs and defendant are tenants in common of the water of the stream, and the latter invokes the rule that any one of such tenants may control the property jointly owned. But, as was well said by the learned judge who tried the case in the superior court, "one tenant in common in so far as he interferes with or works an injury upon the joint property to the damage or injury of his cotenant is a trespasser to that extent. He cannot assume, because he has a certain interest in the common property, to deal with it or use it to the detriment of other co-owners." Every one of the parties has the right to insist upon an unobstructed natural flow of the stream to the intake of the zanja and to demand a continuance of the conditions which prevailed when he made his appropriation. (Kinney on Water Rights, 2d ed., sec. 784; *Handy Ditch Co. v. Louden Canal Co.,* 27 Colo. 518, [62 Pac. 847].) The use by a tenant in common of more than his share of water may be enjoined. (1 Wiel on Water Rights, 3d ed., sec. 320; *Lorenz v. Jacobs,* 2 Cal. Unrep. 296, [3 Pac. 655].) Therefore the existence of joint ownership in the ditch and the water does not protect defendant from the consequences of his acts as pleaded and found.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.
CLXXI Cal.—7